**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| NATASHA OGUNNUPE, STEPHEN GERBER, and MARTHENYA TRUITT, *on behalf of themselves and all similarly situated individuals*,<br><br>Plaintiff,<br><br>v.<br><br>BOZZUTO MANAGEMENT COMPANY, PENTAGON RESIDENTIAL I, LLC d/b/a THE WITMER, RESTON GATEWAY CONDO D1, LLC d/b/a SKYMARK, and FRG BEACON GROVETON LLC d/b/a THE BEACON AT GROVETON,<br><br>Defendants. | ) | Civil Action No. 1:26-cv-417-PTG-IDD |

**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiffs Natasha Ogunnupe, Stephen Gerber, and Marthenya Truitt, on behalf of themselves and all other similarly situated individuals, file this Class Action Complaint against Defendants Bozzuto Management Company ("Bozzuto"), Pentagon Residential I, LLC d/b/a The Witmer ("The Witmer"), Reston Gateway Condo D1, LLC d/b/a Skymark ("Skymark"), and FRG Beacon Groveton LLC d/b/a The Beacon of Groveton ("The Beacon") and allege as follows:

**<u>PRELIMINARY STATEMENT</u>**

1. Over the last decade, businesses have increasingly utilized "junk fees" to boost their profits. Junk fees are commonly defined as "add-on charges that provide little to no value in exchange" for the price. Luke Herrine, *Unfairness, Reconstructed*, 42 Yale J. on Reg. 95, 122 (2025). Businesses use these fees to slowly drive-up the cost on consumers (and the profits for themselves)—often in an unfair, illegal and deceptive manner. As the Federal Trade Commission recently explained, "[m]isleading fees are prohibited," and businesses "can't lie about the fees you

charge."[1] Instead, businesses must "[t]ell the truth when it comes to fee-related information that matters, like what's being charged and why." *Id*.

2. This case arises because Defendant Bozzuto (a property management company), in collusion with its clients (all landlords), The Witmer, Skymark, and The Beacon (collectively, the "Landlord Defendants"), did not tell the truth about certain fees imposed on tenants at the properties it manages throughout the Commonwealth of Virginia. Defendants also charged fees prohibited by Virginia law. Defendants engaged in this scheme to increase their profits while advertising their units at a lower rental price, thereby luring unsuspecting consumers into leases packed with additional fees for services their rental payments are already supposed to guarantee. As multiple reports have now found, this practice has only compounded the rent burden on low- and middle-income Americans, depriving them of the financial mobility needed to advance up the socioeconomic ladder.[2] These additional fees also compound the eviction crisis.

3. As federal data has shown, these fees add up to create a disproportionate burden on Virginians—particularly low- and middle-income Virginians—that deprives them of funds to pay other expenses, to save for a home, and to move up the socioeconomic ladder.[3]

---

[1] Federal Trade Commission, *Getting to the bottom line: The FTC's bipartisan Junk Fees Rule and your business*, available at: https://www.ftc.gov/business-guidance/blog/2024/12/getting-bottom-line-ftcs-bipartisan-junk-fees-rule-your-business.

[2] *See Federal Data Shows Many Virginians are 'Rent Burdened*', Va. Public Radio (Sept. 24, 2025), https://www.wvtf.org/news/2025-09-24/federal-data-shows-many-virginians-are-rent-burdened (reporting based on federal data that "four out of 10 people who are renting in Virginia cannot realistically afford their rent" and descriving Virginia's "outsized eviction rate"); *see also Nearly Half of Renter Households are Cost-Burdened, Proportions Differ by Race*, U.S. Census Bureau (Sept. 12, 2024), https://www.census.gov/newsroom/press-releases/2024/renter-households-cost-burdened-race.html (last visited Oct. 1, 2025)

[3] See *Federal Data Shows Many Virginians are 'Rent Burdened*', Va. Public Radio (Sept. 24, 2025), https://www.wvtf.org/news/2025-09-24/federal-data-shows-many-virginians-are-rent-

4. As the use of deceptive and predatory fees and false advertising of true rental costs has increased, federal and state regulators have started to take action, including in a recent lawsuit filed by the District of Columbia Attorney General and a proposed rulemaking by the Federal Trade Commission.[4]

5. Despite being on notice that these fees are unlawful and deceptive, industry actors, including Defendant Bozzuto—one of the largest property managers in Virginia—and its landlord clients have continued to charge excessive, deceptive, and unlawful fees in violation of state law. And they continue to conceal the true costs of renting in their advertising, including the websites for each of Bozzuto's properties in Virginia that are the subject of this lawsuit.

6. Bozzuto and its landlord clients conceal these extra fees and their true nature for an obvious reason: they can lure unsuspecting consumers into applying to live at their properties, only to turn around and pack the consumers' leases with additional fees after the consumers have invested their time and money (including payment of nonrefundable application fees) into living at a property and are thus unlikely to walk away.

7. This case arises from Defendants' deceptive and unlawful conduct in imposing, collecting, and failing to truthfully advertise a $25-per-month "HVAC Fee" ("HVAC Fee"), a $15-per-month trash fee ("Trash Fee"), and a $500 per lease "Amenity Fee" or "amenity/admin fee" ("Amenity Fee") (collectively, the "Disputed Fees").

---

burdened; *Nearly Half of Renter Households are Cost-Burdened, Proportions Differ by Race*, U.S. Census Bureau (Sept. 12, 2024), https://www.census.gov/newsroom/press-releases/2024/renter-households-cost-burdened-race.html (last visited Oct. 1, 2025).

[4] *DC AG Sues Multifamily Landlord Over Alleged Deceptive Rental Fee Advertising*, Covington (May 6, 2026), https://www.insideprivacy.com/consumer-protection/dc-ag-sues-multifamily-landlord-over-alleged-deceptive-rental-fee-advertising/ (last visited May 12, 2026).

8. Defendants impose these Disputed Fees through form lease agreements that Bozzuto generates, designs, and determines based on the desired budgetary outcomes of its clients, including the Landlord Defendants, who ultimately approve the form lease agreement and fees to assess at their respective properties—Plaintiffs' apartment complexes. Bozzuto and the Landlord Defendants each personally participate in, approve, and decide upon the language of the form lease agreements published to Plaintiffs and the putative class members defined below. Upon information and belief, Bozzuto uses substantially the same lease agreement and utility addendums at all of the properties it manages in Virginia, with the only difference being the amount of the Disputed Fees charged at each property. The form lease agreements approved and published to Plaintiff and the class members by Defendants contain uniform misrepresentations that are materially indistinguishable from property to property, such that all of the tenants at Virginia properties managed by Bozzuto are affected in the same manner by its misconduct. For this reason, Plaintiffs bring this action not only on their own behalf, but on behalf of other tenants of Bozzuto properties in Virginia who were charged and paid the same unlawful and deceptive fees.

9. Defendants were well aware at the time they implemented the Disputed Fees and published their form lease agreement to Plaintiffs and the class members that they bore the sole burden of providing functioning HVAC, as well as trash receptacles, to their tenants and maintaining the building's common areas in fit condition. Indeed, both VRLTA and the Virginia Court of Appeals have explicitly held that such fees cannot be charged to tenants. *See* Va. Code § 55.1-1220(A) (requiring landlords to, in relevant part, "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition"; "[k]eep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition"; "[m]aintain in good and safe working order and condition all electrical, plumbing,

sanitary, heating, ventilating, air-condition, and other facilities and appliances . . . supplied or required to be supplied by him"; "provide and maintain appropriate receptacles and conveniences for the collection, storage, and removal of ashes, garbage, rubbish, and other waste incidental to the occupancy of dwelling units and arrange for the removal of the same"; and "[s]upply running water and reasonable amounts of hot water at all times and reasonable air conditioning if provided and heat in season except where the dwelling unit is so constructed that heat, air conditioning, or hot water is generated by an installation within the exclusive control of the tenant or supplied by a direct public utility connection"); *Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code. § 55.1-1220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

10. Making matters worse, Defendants' form Utility and Services Addendum claims that tenants are merely paying for "service to [their] dwelling" for HVAC and trash collection, when in fact the costs of the entire community and maintenance of common areas is imposed on the tenants by each fee.

11. Further adding to the deceptive nature of the lease conditions, Defendants charge a flat rate for the Disputed Fees when in fact they do not incur expenses commensurate with the Fee.

12. Indeed, at Plaintiff Ogunnupe's apartment complex, The Witmer, which has 440 units, Defendants collect approximately $11,000 a month ($25 per unit), or $132,000 per year, purportedly for the cost of providing basic heating and air conditioning to their tenants—something Defendants are already obligated to provide under Virginia law—yet Plaintiff does not receive any monthly HVAC maintenance to her dwelling or anything that would justify the exorbitant cost imposed on her and her co-tenants by Defendants.

13. Likewise, Plaintiff Ogunnupe has to take her own trash to a mailroom that has a chute that leads to the dumpster at her apartment complex, while she and her co-tenants pay almost $7,000 a month to Defendants for the privilege of doing so.

14. Similarly, while collectively paying approximately $220,000 each year for a "Amenity Fee," which purportedly is required for "the right to use, in common with other residents, common areas and amenities of the community," Plaintiff Ogunnupe and her co-tenants already have that right by virtue of their residency in one of Defendants' dwelling units. Indeed, even though Plaintiff pays $500 each lease period for the Amenity Fee, in order to actually use the common areas (office, board room, outdoor grill, and clubroom), she must reserve the space on Bozzuto's website and pay an additional fee to reserve and use the common areas ranging from $250.00-$500.00.

15. Instead of providing the services that Defendants claim in their leases are covered by the Disputed Fees, Defendants in fact uses these junk fees to deceptively generate additional profit, while shifting the burden of providing a trash-free, sanitary, and habitable living space and common areas onto their tenants.

16. Thus, Defendants engaged in and continue to engage in and profit from a scheme that induces the tenants in the properties it manages into a residential lease that misrepresents their rights to certain services related to the warrant of habitability—guaranteed under Virginia law—and forces them to waive such rights. Living with the harm of having paid, and continuing to pay, Defendants' deceptive monthly fees, Plaintiffs are forced to bring this lawsuit to seek relief for Defendants' ongoing violations of the Virginia Consumer Protection Act ("VCPA") and Virginia Residential Landlord Tenant Act ("VRLTA").

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Count One under 28 U.S.C. § 1332(d) because Plaintiff and putative class members (Virginia) and Bozzuto (Delaware and New York) are each citizens of different states and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Under 28 U.S.C. § 1332(d)(6), "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." The test for determining whether the amount in controversy is "the pecuniary result to either party which [a] judgment would produce." *Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Employees Ins. Co. v. Lally,* F.2d 568, 569 (4th Cir.1964)). Statutory damages "are properly includable in the calculation of the jurisdictional amount," including increased damages for willful violations. *See Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 735 (4th Cir. 2009). Attorney's fees may also be included in the amount in controversy when recoverable under the asserted statute. *Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199, 202 (1933) (holding that where a state statute provides for the award of attorney's fees, those fees can be considered as part of the amount in controversy).

18. Here, Bozzuto has at least 20,000 units among its 60 Virginia properties, meaning that there are at least 20,000 putative class members (before counting any co-tenants in each unit) in Count One, which seeks relief for all persons who signed a lease with landlords of Virginia properties managed by Bozzuto.

19. In Count One, which alleges violations of the VCPA, Plaintiff and each class member are entitled to at least $1,000 per month for each month that Bozzuto willfully collected the Disputed Fees, which, upon information belief, have been charged in full or in part for a least two years. This entitles Plaintiff and the class members to at least a total of $24,000 per class

member as of the date of this Complaint, or $480,000,000 ($24,000 x 20,000 class members) for the class, which will continue to increase by $1,000 per class member each month that this case proceeds and additional Disputed Fees are collected. Va. Code § 59.1-204; *see Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) (holding future damages may be included in this calculation when "'a right to future payments. . .will be adjudged in the present suit.'" (quoting 1 Moore's Federal Practice P 0.93(5. 3) at 904)); *Goff v. Jones*, 47 F. Supp. 2d 692, 695 (E.D. Va. 1999) (Lee, J.) (future damages could be considered in deciding amount in controversy). This is before considering the attorney's fees that the Court could award under the VCPA. Va. Code § 59.1-204(B).

20. Alternatively, as the VCPA entitles each "person" injured by a supplier's conduct to recover statutory or actual damages, there are at least 20,000 individual tenants in the class defined in Count One. Thus, even providing a conservative damages recovery of only $1,000 per person under the VCPA, which represents only a single willful violation of the Act for only one of the Disputed Fees, the total damages would be at least $20 million. Even if the fact finder found only a single, non-willful violation with respect to just one of the Dispute Fees, moreover, the total damages per class member would be at least $500, for a total recovery of $10 million.

21. The Court also has jurisdiction over all other claims under at least 28 U.S.C. § 1367 because they each arise from the same case or controversy as Count One. And the Court has jurisdiction over Count Three because the amount in controversy exceeds $5 million and Plaintiffs and the putative class members are citizens of a different state (Virginia) from the Landlord Defendants (Delaware, New York, California, and Massachusetts).

22. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Division, where Plaintiffs reside and property owned and/or managed by Defendants is located.

**PARTIES**

23. Plaintiff Natasha Ogunnupe is a natural person residing in this Division and District.

24. Plaintiff Stephen Gerber is a natural person residing in this Division and District.

25. Plaintiff Marthenya Truitt is a natural person residing in this Division and District.

26. Defendant Bozzuto is incorporated in Delaware with its principal place of business in Maryland.

27. Defendant Bozzuto is a "supplier" under the VCPA because it is a "seller, lessor . . . or professional . . . who advertises, solicits, or engages in consumer transactions"—namely, the leasing of apartments for personal, family, or household purposes. Va. Code § 59.1-198.

28. Bozzuto is the entity that collects the Disputed Fees, and it is liable for its misrepresentations to Plaintiff and the putative class members that they owe, and that it can collect, such fees. Bozzuto is also individually liable for its own misconduct in deciding to charge, charging, and collecting the Disputed Fees, and in determining and publishing the language in the form lease agreements that deceives Plaintiff and the putative class members.

29. And as explained above, Bozzuto decides the terms of the form leases published to Virginia consumers, including Plaintiffs, and its employees are the ones who sign the lease agreements, including the lease agreements with Plaintiff in this case.

30. Bozzuto's direct role in deciding on the leases that are ultimately published to consumers—as well as which Fees are collected—is confirmed by the fact that it provides

addenda in each form lease that are prepared on Bozzuto letterhead and represent that Bozzuto is the author of the addendum. The Amenity Fee Addendum also states that it is issued in "All States," confirming that Bozzuto uniformly assesses and collects the Disputed Fees from class members across the nation, including the Commonwealth of Virginia.

31. Bozzuto is also individually liable for misrepresentations it made ostensibly on behalf of its landlord clients. *See Stitt v. Nautilus Enters., Inc.*, 17 Va. Cir. 150, at *2 (1989) (finding that officers and agents of a corporate entity can be held liable under the VCPA for their own misconduct).

32. Defendant Pentagon Residential I, LLC d/b/a The Witmer is a limited liability company incorporated in Delaware with its principal place of business in New York.

33. Defendant Reston Gateway Condo D1 LLC d/b/a Skymark is a limited liability company incorporated in Delaware with its principal place of business in Massachusetts.

34. Defendant FRG Beacon Groveton LLC is a limited liablity company incorporated in Delaware with its principal place of business in California.

35. The Landlord Defendants are each a "supplier" under the VCPA because they are a "seller, lessor . . . or professional . . . who advertises, solicits, or engages in consumer transactions"—namely, the leasing of apartments for personal, family, or household purposes. Va. Code § 59.1-198. The Landlord Defendants are liable for their misrepresentations to Plaintiffs and the putative class members that they owe, and that they can collect, such Disputed Fees and for falsely advertising the true cost of their rental units.

36. The Landlord Defendants are each also a "landlord" as defined by the VRLTA, as they are the owners and lessors of the dwelling units at The Witmer, Skymark, and The Beacon apartments, respectively, of which Plaintiffs are tenants.

## FACTS

### *Plaintiff Ogunnupe's Lease Agreement*

37. Plaintiff Ogunnupe is a resident of Arlington, Virginia.

38. She resides at The Witmer apartments, which is owned by The Witmer and managed and operated by Bozzuto.

39. For several years, and within the last two years, Ms. Ogunnupe's lease agreements with The Witmer, which were drafted and published to her by Bozzuto and approved by The Witmer, have included provisions requiring her to pay a $25-per-month HVAC Fee, a $15-per-month Trash Fee, and a $500-per-lease Amenity Fee.

40. Bozzuto and The Witmer disclosed the fees to Ms. Ogunnupe and the class members in form lease agreements that included a form "Utility and Services Addendum," which claims that the HVAC Fee and Trash Fee are merely "utilities," even though Virginia law defines "utility" as only "electricity, natural gas, or water and sewer . . . ." Va. Code § 55.1-1200.

41. In the form Utility and Services Addendum, Bozzuto and The Witmer state that Ms. Ogunnupe and the class members must pay the HVAC Fee and Trash Fee to cover "service to [their] dwelling." The form Addendum further states with respect to the HVAC Fee and the Trash Fee that the flat fee merely covers an "allocat[ion]" of the "bills . . . billed by the service provider to [Defendants]." And the Addendum later states that the flat fees are a "fair and reasonable amount for the services provided . . . ."

42. The form lease published by Bozzuto to Ms. Ogunnupe and her co-tenants and approved by The Witmer also includes an addendum on Bozzuto letterhead titled "Additional Rent for Common Areas and Amenities – Addendum to Lease – All States," which provides that:

> As part of Resident's contractual undertaking in renting an apartment from Owner, it is required that the Resident make a lump sum payment of $500 in additional rent

> ("the Additional Rent") for the right to use, in common with other residents, the common areas and amenities of the community. At its sole option, Owner may charge the Additional Rent for each renewal Lease and said Additional Rent payment shall be made as part of the first monthly rent payment upon each renewal.

43. This addendum is signed by Bozzuto Management Company on behalf of the owner.

44. In other words, for each lease term, Ms. Ogunnupe and her co-tenants must pay $500 simply for the "right to use . . . the common areas and amenities of the community" that they are each already paying monthly rent to live at.

45. Put differently, if Plaintiff and her co-tenants do not pay this Amenity Fee, they would have no right to enter any common areas, which would include the very hallways, elevators, and stairwells needed to even enter their unit—the unit that they are paying thousands in rent each month to inhabit.

46. Confirming that this Amenity Fee is nothing more than a farce designed to extract more money from Defendants' tenants for conveniences to which they are already entitled, the Amenity Fee Addendum further states that even if the amenities are not available or are not used by the tenants, they must still pay the Fee and "[r]esidents are not entitled to abatement of Rent or Additional Rent or damages when facilities, services, amenities and equipment are not available."

47. This is further supported by the fact that Bozzuto requires a reservation on the Bozzuto website and an additional payment ranging from $250.00- $500.00 per reservation to use the amenities at The Witmer, even though it is charging $500 per lease purportedly for the right to use the same.

48. For this reason and based on discovery in other landlord junk fee cases, Ms. Ogunnupe alleges upon information and belief that the Amenity Fee is a pure junk fee that

provides little if any of the supposed benefits described in her lease agreement and is instead designed to generate pure profit for Bozzuto and The Witmer.

49. At all times within the past two years, and in reliance on the representation by Bozzuto and The Witmer that the Fees are owed and have the disclosed uses and benefits, Ms. Ogunnupe has paid each of the above fees in the amounts and frequencies described.

***Plaintiff Gerber's Lease Agreement***

50. Plaintiff Gerber is a resident of Reston, Virginia.

51. Since February 2025, Mr. Gerber has resided at the Skymark apartments, which is owned by Defendant Skymark and managed by Bozzuto.

52. In February 2025, Mr. Gerber executed a lease agreement for his unit at the Skymark.

53. This lease included a Cover Sheet claiming that the "Total Monthly Rent" was equal to the "Monthly Base Rent" after excluding "other recurring fees or expenses." In other words, Bozzuto and Skymark claimed that Mr. Gerber would not owe any additional fees beyond his base rent. The Additional Fees disclosure in the cover letter also included only an optional parking fee of $125 and utility billing fees for the ratio billing service.

54. Despite claiming that Mr. Gerber owed only his base rent and potentially a parking fee, hidden in the lease was a form "Utility and Services Addendum" that included a Trash Fee of $25 per month and a HVAC Fee of a varying amount each month.

55. Like Ms. Ogunnupe's lease, Mr. Gerber's form Utility and Services Addendum falsely described the trash and HVAC fees as covering "utilities," even though Virginia law defines "utility" as only "electricity, natural gas, or water and sewer . . . ." Va. Code § 55.1-1200.

56. The form Addendum also falsely stated that the Trash Fee and HVAC Fee were for "service to your dwelling," when in fact, upon information and belief, the fees covered overall operating costs for providing trash receptacles and HVAC to the property, not individual units.

57. Indeed, the Utility Addendum later stated that the HVAC Fee was for "your monthly share of the operation of the [Variable Refrigerant Flow] System *and* your in unit HVAC usage," meaning the fee covered far more than just the service to Mr. Gerber's dwelling. (emphasis added).

58. Adding to this deception, the Utility and Services Addendum also claimed that if a flat fee was charged—such as the Trash Fee—the fee "represent[ed] a fair and reasonable amount for the service(s) provided . . . ." It also claimed that the Trash Fee and HVAC Fee were "allocat[ions]" of "bills . . . billed by the service provider to us and then allocated to you . . . ."

59. Later in the same lease—and again undisclosed in the Cover Sheet—the lease also included a "Community Policies and Procedures Addendum," prepared on Bozzuto letterhead, that stated Mr. Gerber would also have to pay a $500 "Amenities/Admin Fee." But this Addendum did not disclose what the fee was for beyond supposed amenity and administrative costs.

60. Adding to the undisclosed purpose and use of the Amenities Fee, Skymark charges tenants for reserving the amenities in addition to the Amenity Fee.

61. Because of this and the lack of any other disclosure of the Amenity Fee in the lease agreement, Plaintiff Gerber alleges upon information and belief that the Fee is nothing more than a pure junk fee designed to generate additional revenue for Skymark and Bozzuto and that provides little if any of the actual benefits implied by the fee description.

62. At all times since February 2025, and in reliance on the representation by Bozzuto and Skymark that the Fees are owed and have the disclosed uses and benefits, Mr. Gerber has paid each of the above fees in the amounts and frequencies described.

***Plaintiff Truitt's Lease Agreement***

63. Plaintiff Truitt is a resident of Alexandria, Virginia.

64. Since 2016, Ms. Truitt has resided at the Beacon at Groveton apartments, which is managed by Bozzuto.

65. In December 2024, Ms. Truitt executed a lease with Defendant The Beacon that included a $20 per month Trash Fee and a one-time-per-lease "Amenity Fee" of $250.

66. Ms. Truitt's lease included the same Utility and Services Addendum, with the same form language and representations, as Ms. Ogunnupe's and Mr. Gerber's lease agreements.

67. Ms. Truitt's lease also included the same Community Policies and Procedures Addendum as Mr. Gerber, which likewise required Ms. Truitt to pay a $250 "Amenities/Admin Fee" (the Amenity Fee).

68. However, like Ms. Ogunnupe and Mr. Gerber, The Beacon apartments requires payment of reservation fees to actually use the amenities at the apartment complex. Considering this, and the lack of any disclosure of the actual use and benefits of the "Amenities/Admin Fee," Plaintiff Truitt alleges upon information and belief that this fee is nothing more than a pure junk fee that has none of the described uses or benefits implied by the fee's description, and is instead a pure profit generator for Bozzuto and The Beacon.

69. At all times within the past two years, and in reliance on the representation by Bozzuto and The Beacon that the Fees are owed and have the disclosed uses and benefits, Ms. Truitt has paid each of the above fees in the amounts and frequencies described.

***Bozzuto's Role in Setting and Publishing the Fees***

70. Bozzuto, through its employees, is responsible for providing the leases to Plaintiff and the putative class members in Count One, and for collecting all amounts allegedly owed under their leases.

71. Bozzuto's employees also sign the leases that are entered into at the properties it manages in Virginia, just as was done with Plaintiff's lease.

72. Upon information and belief, Bozzuto is responsible for drafting the terms of the form lease agreements used at all of its properties, including Plaintiff's leases, which misrepresent to tenants like Plaintiffs that it can collect the Disputed Fees at issue in this lawsuit and that the fees are intended for services that Bozzuto never intended to provide or to provide at the actual cost to them.

73. Bozzuto even has certain addendum on its letterhead, including the addendum that requires payment of the Amenity Fee.

74. Bozzuto is also directly responsible for publishing to tenants monthly invoices and other correspondence claiming that such fees are duly owed under the terms of their lease agreements.

75. Upon information and belief, and based on industry practice, Bozzuto also decides the fees to assess at each property, and the amount of those fees, based on surveys of competitor properties. In other words, Bozzuto decides what fees to assess and the amount to charge based on what the market will allow it to charge, not on its actual costs of providing the disclosed services. Bozzuto then seeks and obtains approval from each landlord, including the Landlord Defendants, to assess the fees.

76. Although Defendants claim that Plaintiffs and others lawfully owed the Disputed Fees, Virginia law prohibits Defendants from collecting each Fee.

***The Unlawful HVAC Fee***

77. The HVAC Fee assessed to Ms. Ogunnupe and Mr. Gerber directly violates Virginia Law, which prohibits landlords from creating lease provisions that waive the warranty of habitability established by Va. Code § 55.1-1220(A). *See Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code. § 55.1-1220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

78. Here, Defendants require their tenants to pay a fees to cover HVAC costs (the HVAC Fee). However, Virginia's statutory warranty of habitability expressly states that "[t]he landlord shall . . . [m]aintain in good and working order and condition all electrical, plumbing, sanitary, hearing, ventilating, air-conditioning, and other facilities and appliances . . . supplied or required to be supplied by him." Va. Code § 55.1-1220(A)(4).

79. It is also the landlord's responsibility to "[s]upply . . . reasonable air conditioning if provided and heat in season except where the dwelling unit is so constructed that heat, air conditioning, or hot water is generated by an installation within the exclusive control of the tenant or supplied by a direct public utility connection," neither of which applies to Plaintiffs' or the class members' dwelling units here.

80. In other words, it is the landlord's sole responsibility to both provide heating and air conditioning to a dwelling unit and maintain in good condition that HVAC system.

81. "[B]ased on a plain reading of Code § 55.1-1220 in context with the rest of the VRLTA and our prior precedent, . . . Code § 55.1-1220(A) provides tenants a warranty of

habitability that a landlord and tenant cannot waive by agreement." *Parrish*, 80 Va. App. at 439-40.

82. Nor can Defendants pass along the costs of HVAC to their tenants under Va. Code § 55.1-1212, which permits only ratio billing for a "utility," which is defined by the VRLTA as "electricity, natural gas, or water and sewer," not HVAC. Va. Code 55.1-1200.

83. Despite their unwaivable obligation under Virginia law to provide and maintain air conditioning and heating to a dwelling unit, and their election to provide the same through a "Variable Refrigerant Flow System," Bozzuto, The Witmer, and Skymark each decided to charge, assess, and collect a monthly HVAC Fee from Plaintiffs Ogunnupe and Gerber and the class members they represent, effectively passing on the burden and cost of providing and maintaining HVAC to their respective dwelling units onto the tenants, in violation of their unwaivable obligations under Virginia law.

84. In addition to charging the HVAC Fee in violation of Virginia's warranty of habitability, Bozzuto, The Witmer, and Skymark also misrepresented the uses and benefits of the HVAC Fee, including by claiming that it simply covered "service to [each tenant's] dwelling unit" that it represented an "allocat[ion]" of the "bills charged by the service provider to us," and that the fee assessed was a "fair and reasonable" estimate of those costs.

85. Upon information and belief, these representations were not true at the time they were made, because Bozzuto, The Witmer, and Skymark instead each knowingly assessed and approved a HVAC Fee that was set at amounts far higher than the actual costs—or even a fair and reasonable estimation of the same—and would include costs unrelated to services to each tenant's dwelling.

86. For example, Plaintiff Ogunnupe does not receive monthly HVAC services to her dwelling, let alone services that cost the $25-per-unit that Defendants collect from Plaintiff and her co-tenants, which totals $11,000 per month and $132,000 per year in total revenue for Ms. Ogunnupe's complex, alone.

87. Considering that VRF systems like those at The Witmer and Skymark are advertised for their cost-savings over traditional HVAC of up to 45%,[5] Plaintiffs allege that the actual cost to The Witmer and Skymark of maintaining and providing HVAC services through the VRF systems is far lower than the amounts they collect from Plaintiffs and their co-tenants at each property.

88. Upon information and belief, the same is true of the other properties in Virgina managed by Bozzuto at which tenants are charged a HVAC Fee for supposed maintenance and use of a VRF System.

***The Unlawful Trash Fee***

89. The Trash Fee assessed to Plaintiffs also directly violates Virginia Law for much the same reasons as the HVAC Fee, which prohibits landlords from creating lease provisions that waive the warranty of habitability established by Va. Code § 55.1-1220(A).

90. Indeed, like air conditioning and heat, the warranty of habitability also requires landlords to "provide and maintain appropriate receptacles and conveniences for the collection,

---

[5] *See Variable Refrigerant Flow*, U.S. Gen. Servs. Admin., https://www.gsa.gov/governmentwide-initiatives/federal-highperformance-buildings/highperformance-building-clearinghouse/emerging-technology-evaluations/hvac-technology/variable-refrigerant-flow (last visited May 12, 2026) (claiming a 34% energy savings over traditional HVAC with natural gas reheating and 45% savings over traditional HVAC with electric reheating).

storage, and removal of ashes, garbage, rubbish, and other waste incidental to the occupancy of dwelling units and arrange for the removal of same." Va. Code § 55.1-1220(A)(6).

91. Despite this explicit obligation, that the Court of Appeals found unwaivable in *Parrish*, Defendants knowingly charged tenants, including Plaintiffs, at their properties in Virginia a monthly Trash Fee, which, upon information and belief, merely covered costs of providing common trash receptacles to Plaintiffs and their co-tenants.

92. Indeed, Plaintiffs have not received any trash collection services directly to their units, despite their leases' claim that such services would be provided. Instead, they must take all of their own trash to a common dumpster at their respective properties, which, upon information and belief, does not cost the almost $7,000 per month (and $84,000 per year) that Defendants collect from the Trash Fee at Plaintiff Ogunnupe's apartment complex, or the $152,400 and $69,840 per year in Trash Fees collected at Plaintiffs Gerber's and Truitt's complexes, respectively. Upon information and belief, the same is true of the other properties in Virginia managed by Bozzuto that also charge and collect a monthly Trash Fee.

93. Defendants cannot assess the Trash Fee as a "local government fee," either, which is defined as "local government charges or fees assessed against a residential building," Va. Code § 55.1-1212. Nor can they assess it as a "utility," which is explicitly defined as "electricity, natural gas, or water and sewer," not trash collection. Va. Code 55.1-1200.

94. Upon information and belief, the Trash Fee is not used to cover a local government fee assessed against Defendants' properties for trash collection, but to pay for a private trash removal and dumpster service (such as Waste Management).

95. Moreover, even if the Trash Fee were a pass-along local government fee, the VRLTA permits Defendants only to "allocat[e] [to tenants] the actual or anticipated local

government fees billed to the residential building owner," which, upon information and belief, the flat fee charged by Defendants for trash collection does not do. Va. Code § 55.1-1212(H).

96. Instead, upon information and belief and based on discovery in other landlord junk fee cases, Defendants base the Trash Fee on market surveys of what is charged at other properties; in other words, they set the Fee not based on actual or anticipated costs of trash collection, but how much they can get away with charging in the marketplace to drive up their own profits.

97. Based on these facts and discovery in other landlord junk fee cases, in addition to the deceptive assessment of fees for services that are the landlords' sole responsibility, Plaintiffs allege that Defendants misrepresent both the uses and benefits of the Trash Fee, in that the Fee does not cover services to Plaintiffs' and the class members' dwelling units and is not a fair and reasonable estimation of the costs of the trash services actually covered by the Fee or a mere allocation of the bills charged to Defendants for trash services. Instead, the Fee is deceptively set at prices far higher than the actual costs of trash receptacles and collection at Bozzuto's Virginia properties in order to generate additional profits for Defendants and Bozzuto's other landlord clients.

***The Unlawful Amenity Fee***

98. The "Amenities/Admin Fee" or "Common Area Fee" (collectively referred to herein as the "Amenity Fee") assessed by Defendants also directly violates Virginia's statutory warranty of habitability, which requires landlords to, in relevant part: "[c]omply with the requirements of applicable building and housing codes materially affecting health and safety"; "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition"; and "[k]eep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition." Va. Code § 55.1-1220(A)(1)-(3).

99. As with the landlords' other obligations under the warranty of habitability, these obligations are not waivable and rest solely on the landlords' shoulders.

100. Despite the requirements of Virginia law, of which Defendants were each aware, they nonetheless charged to Plaintiffs an Amenity Fee of $250-500 per lease ostensibly for the purpose of covering the costs of maintaining amenities that are by definition "common areas shared by two or more dwelling units." Va. Code § 55.1-1220(A)(3). It was therefore the Landlord Defendants' sole responsibility to maintain these amenities in a "clean and structurally safe condition," yet they chose to pass this burden onto their tenants to protect their bottom line and generate additional profits.

101. In addition to assessing a fee for discharging duties that were their sole responsibility to provide, the Amenity Fee was also deceptive insofar as it misrepresented the uses and benefits of the Fee as providing a right to access and use the amenities at their respective apartment complexes.

102. Instead, the Amenity Fee did not provide a right to access the amenities, as confirmed by the fact that Defendants still charge additional reservation fees for those who wiish to use the amenities at their properties.

103. Upon information and belief, and based on discovery in other landlord junk fee cases, as an industry practice, the Amenity Fee is instead a pure junk fee designed to generate revenue for Defendants while covering little to none of the actual costs of the services related to the amenities at each property.

104. Indeed, a comparison of the amenities at Plaintiffs' properties confirms that the amount of the Amenity Fee is arbitrary and set not based on the actual costs of the amenities at each property. For example, Plaintiff Gerber's complex, Skymark, advertises that it has a pool,

fitness center, business center, and a clubhouse, for which Plaintiff Gerber and his co-tenants are charged a $500-per-lease Amenity Fee. By comparison, Ms. Truitt's complex, The Beacon, charges $250 per lease for a pool, fitness center, business center, and clubhouse—the same basic amenities. And Ms. Ogunnupe's complex charges $500 for the same basic amenities, as well.

105. Despite providing roughly the same amenities, the Landlord Defendants and Bozzuto nonetheless charge different flate-rate Amenity Fees. Based on this fact, and upon information and belief from discovery in other landlord junk fee cases, Bozzuto in coordination with the landlords at each of its properties, sets the Amenity Fee at an amount designed to generate maximum profits based on the relevant market, and not based on actual or anticipated amenity maintenance costs. In other words, the Fee is not set based on the estimated costs of providing amenities but on how much Defendants can get away with charging after comparing the fees assessed by their competitors.

106. Defendants thus deceptively describe the Amenity Fee's uses and benefits, including deceptively implying or explicitly stating that it will be used to maintain amenities in good and working condition and allow tenants to use the same, when in fact the Fee is used for pure profit and/or little or none of the described services.

***Defendants' Deceptive Advertising and Rental Cost Disclosures***

107. In addition to assessing fees that they cannot charge and setting them at amounts far higher than the actual costs of the services covered, Defendants intentionally conceal the Fees from their advertising and disclosures to prospective tenants.

108. For example, when Plaintiff Gerber went to apply for housing through Skymark's website, the website advertised only the base rent cost for his rental unit, such as in the example below:




109. None of the Disputed Fees are disclosed in Skymark's advertising, as is required by Virginia law. *See* Va. Code § 59.1-200(A)(8)(prohibiting the advertising of consumer goods with the intent not to sell them "at the price or upon the terms advertised").

110. At the time the Complaint was filed, the website for Skymark (and several other Bozzuto properties) included only the following disclaimer requiring prospective tenants to contact a Bozzuto staff member to learn about the actual costs of renting at the property and the additional fees that are assessed:[6]

[6] Since the filing of this Complaint, Defendants appear to have updated their websites to disclose the fees to consumers. However, these changes were not made until after the original Complaint was filed and thus was not in effect during the two years prior to the filing of the Complaint.

Disclaimer: The price shown reflects Base Rent only. Residents are responsible for additional required fees, as permitted by law, including but not limited to: security deposit, amenity fee, parking, pet, and utility charges. These fees are assessed per applicant or per unit as applicable and may vary based on usage or lease terms. Please consult a member of our team for a comprehensive list of all required, optional, and situational fees.

111. Even once Mr. Gerber's application was accepted, moreover, Bozzuto and Skymark continued to deceptively conceal the true cost of renting, stating in the Cover Letter to Mr. Gerber's lease that the monthly cost and base rent were the same price and omitting the mandatory fees from the fee disclosure. Instead, Mr. Gerber and similarly situated consumers are forced to parse through page after page of generic lease terms and fine print to determine the actual costs of renting at the location, while Bozzuto and Skymark affirmatively misrepresent that cost in their cover letter disclosures.

112. The Skymark is not the only Bozzuto property to engage in this deceptive practice, either. At the time the Complaint was filed through to at least April 2026, when Defendants updated their website disclosures, nineteen (19) Bozzuto properties in Virginia have no disclosures in their online advertising regarding the mandatory fees but rely instead of the same disclaimer language as Skymark.

113. A further eleven (11) properties, including the Witmer, disclosed only the Amenity Fee when obtaining a quote for renting a unit, similar to the one shown here, while disclosing none of the mandatory monthly fees:

**QUOTE** SHEET

**Floor Plan:** 1 bedroom / 1 bathroom | 634Sq.Ft. | A1

**Lease Terms:** Apartment530 | 12 months | 4/23/2026 - 4/22/2027

MONTHLY CHARGES

| | | |
|---|---|---|
| Rent | $2,662 | Main charge |

**$2,662** per month

MOVE-IN CHARGES

| | |
|---|---|
| Rent for 8 days | $709.87 |
| Amenity Fee | $500 |

Monthly charges prorated over 8 days.

Quote generated on 4/23/2026 .Rates are subject to change without notice.

114. And sixteen (16) Bozzuto-managed properties in Virginia had no disclosures of any mandatory fees at all in their cost breakdown, such as in the below example:

**Efficiency - Unit #FH-226**

0 Bed 1 Bath 565 Sqft Available : **NOW**

**Cost Customizations**

Desired Move-In Date: 06/06/2026

Lease Terms: 12 mos - $981.00

Number of Applicants: 1

**Monthly Costs**

| | |
|---|---|
| Monthly Rent | $981.00 |
| **Monthly Costs Total** | **$981.00** |

**Price listed is based on lease term and move-in date selections. All prices and availability are subject to change.*

**Total Monthly Leasing Price Total: $981.00**

**Move-in Costs Total: $817.50**

*Monthly (Prorated): $817.50 + One-Time: $0.00, 12 mo. lease*

115. This advertising by Bozzuto and its landlord clients is intentionally deceptive and misleading and affirmatively misrepresents to consumers the actual costs of renting a unit.

116. At the time they advertised the costs of renting a unit to Mr. Gerber and similarly situated applicants who used the property websites to apply, Bozzuto and its landlord clients did not intend—and never intended—to lease the units to Mr. Gerber or the other applicants at the price or on the terms advertised on their websites.

117. Upon information and belief, Bozzuto operates, manages, determines the contents of, and publishes the information on each of the property websites that advertise rental pricing to the public, as confirmed by the fact that the copyright disclaimer in the footer of each site states that Bozzuto Management Company is responsible for the website's contents.

118. Upon information and belief, Bozzuto's landlord clients, including the Landlord Defendants, have the final say as to the contents of the websites for their properties, including the advertising of rental pricing to consumers.

119. Notably, Bozzuto and most of its landlord clients, including Skymark, continued until this Complaint was filed to falsely advertise the true costs of renting from them despite a Virginia law enacted in July 2025 explicitly requiring the disclosure of mandatory fees and surcharges in advertising of consumer goods and services. *See* Va. Code § 59.1-608. This confirms Bozzuto's and its landlord clients' conduct has been willful, disregarding the rights afforded to consumers under black-letter Virginia law so that they can continue to lure unsuspecting customers into leases packed with additional fees based on false advertising.

***Defendants' Willfulness***

120. Despite the explicit obligations of Virginia law, of which Defendants were each aware at the time Plaintiffs executed their respective lease agreements, Defendants shifted the

obligation to maintain a habitable, airconditioned, heated, and trash-free premises and properly maintained common areas onto their tenants and profited from the imposition of fees that they had no right to charge.

121. Defendants' misrepresentations of the Disputed Fees were willful. Defendants stood to rake in thousands in additional revenue and cost savings from tenants to cover costs that should have been covered by their rent and which were the landlords' sole burden to bear under Virginia law. Defendants also profited from the imposition of the Disputed Fees, as the revenues generated by such fees exceeded the actual costs of providing the alleged services that they covered. Defendants thus had a pecuniary incentive to represent to Plaintiff and the putative class members that such fees were collectible, when they explicitly were not under Virginia law.

122. Upon information and belief, Defendants were also aware of the *Parrish* decision when it was published through its participation in the National Apartment Association, which sends out notices to property managers and landlords about changes in the law. Yet, Defendants chose to ignore the decision and did not make any changes to the assessment of fees at its properties, without a good faith basis for doing so.

123. Defendants knowingly forced Plaintiff and their other tenants to assume the landlords' obligations to maintain safe and habitable premises and profited from the imposition of Disputed Fees that they had no right to charge. They did so solely for their pecuniary gain and without regard to this known harm to their tenants.

**COUNT ONE**
**VIOLATION OF VCPA, Va. Code § 59.1-200**
**(Class and Individual Claim by Plaintiffs against Defendant Bozzuto)**

124. Plaintiffs incorporate each of the preceding allegations.

125. Under Federal Rule of Civil Procedure 23, Plaintiffs bring this claim on behalf of the following class of which they are each a putative class member:

> All persons who: (1) executed a lease at a property managed by Defendant Bozzuto and located in Virginia under which they (2) paid or were obligated to pay any of the Disputed Fees within the past two years.

126. Under Federal Rule of Civil Procedure 23, Plaintiff Gerber brings this claim on behalf of the following subclass of which he is a putative class member:

> All persons who: (1) executed a lease at a property managed by Defendant Bozzuto and located in Virginia under which they (2) paid or were obligated to pay any of the Disputed Fees within the past two years; and (3) who submitted a rental application within the two years predating the Complaint through the relevant property's website that included, at the time of the application, no disclosure of at least one of the Disputed Fees in the description of the monthly cost of a unit.

127. **<u>Numerosity</u>. Fed R. Civ. P. 23(a)(1)**. Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. There are at least 20,000 class members based on the number of units at Bozzuto's Virginia properties. The class members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

128. **<u>Predominance of Common Questions of Law and Fact</u>. Fed R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendant Bozzuto misrepresented to Plaintiffs and the putative class members in their lease agreements that it could lawfully assess and collect Disputed Fees for obligations imposed on landlords under the statutory warranty of habitability; (2) whether Defendant Bozzuto misrepresented to Plaintiffs and the putative class members that the Disputed

Fees would have certain uses and benefits when in fact the fees each generated profits for Bozzuto and/or did not cover the described uses or benefits; (3) whether Defendant Bozzuto advertised to the subclass a price for renting a unit at the properties it manages that it did not intend to honor, including because it did not disclose mandatory fees to the subclass members prior to their application; (4) whether Defendant Bozzuto's violations were willful; and (5) the appropriate amount of damages for Defendant Bozzuto's violations.

129. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

130. **Adequacy of Representation. Fed R. Civ. P. 23(a)(4).** Plaintiffs are adequate class representatives because their interests coincide with, and are not antagonistic to, the putative class members' interests. They have retained experienced and competent counsel; they intend to continue to prosecute this action vigorously; they and their counsel will fairly and adequately protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

131. **Superiority. Fed R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized

litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant Bozzuto's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

132. As to Plaintiffs and the class members, Defendant Bozzuto violated the VCPA, Va. Code § 59.1-200, by, at a minimum:

a. Representing to Plaintiffs and the putative class members that they owe a HVAC Fee, Trash Fee, and/or Amenity Fee, when in fact such services are guaranteed and unwaivable under the Virginia warranty of habitability as part of their right to a safe and habitable premises and clean and orderly common spaces to which their base rent entitles them;

b. Representing to Plaintiffs and the class members that the HVAC Fee and/or Trash Free were merely for the cost of "service to [their] dwelling" units, when in fact Bozzuto knew at the time it made such representation that each Fee did not cover services to the dwelling but in fact covered services outside of their dwelling unit and or none of the services at all;

c. Representing to Plaintiffs and the putative class members that the HVAC Fee and/or Trash Fee was merely a flat rate "allocat[ion]" of the "bills . . . billed by the service provider to us" for each service, when in fact Bozzuto knew at the time it made this representation that it each Fee was set not based on the actual costs of the services but based on the maximum possible profit it could generate from each Fee based on surveys of market competitors;

d. Representing to Plaintiffs and the putative class members that the HVAC Fee and/or Trash Fee were a "fair and reasonable" estimation of the costs of each service, when in fact Bozzuto knew at the time it made this representation that it each Fee was set not based on the actual costs of the services but based on the maximum possible profit it could generate from each Fee based on surveys of market competitors;

e. Representing and deceptively implying that the HVAC Fee, Trash Free, and/or Amenity Fee merely cover certain services—i.e., have certain uses and benefits—when in fact they are specifically set by Bozzuto at prices far higher than the actual costs of those services and/or are designed to benefit only Bozzuto and its landlord clients while covering few if any of the services described or implied by the name of the Fee;

f. Representing that the HVAC Fee and/or Trash Fee are merely "utilities" that may be passed on to the tenants under Virginia law, when in fact that is not the case.

133. The above affirmative misrepresentations and material omissions constitute, at a minimum, violations of Va. Code 59.1-200(5) and (6), insofar as they misrepresent that the goods and services provided by the fees have certain qualities, characteristics, uses or benefits, or are of a particular standard, quality, grade, style, or model. They also constitute a "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction," in violation of Va. Code § 59.1-200(14).

134. With respect to Plaintiff Gerber and the subclass members, Bozzuto also violated Va. Code § 59.1-200(A)(8) and (14) by deceptively advertising goods or services with intent not

to sell them at the price or upon the terms advertised, including because the websites for each property managed by Bozzuto failed to disclose all mandatory fees and surcharges in their advertising of the costs of renting a unit, and because several property websites affirmatively misrepresented that the base rent and total monthly cost were the same.

135. The above misrepresentations and material omissions are not an aspect of a consumer transaction subject to the Virginia Residential Landlord Tenant Act, as the VRLTA does not cover the conduct at issue—i.e., making misrepresentations in lease agreements and false advertising—with respect to property managers like Bozzuto.

136. "The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud." *Ballagh v. Fauber Enters.*, 290 Va. 120, 124 (2015) (citing *Owens v. DRS Auto. Fantomworks, Inc.,* 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014) ("[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law.... Therefore, [it] extends considerably beyond fraud.")). The elements "of the two claims are [therefore] different." *Id.* The VCPA applies to *both* misrepresentations and fraudulent acts by landlords and property managers in relation to a lease agreement, as outlined in § 59.1-200. Va. Code § 59.1-199(5). With respect to misrepresentations under the VCPA, a plaintiff need only show (1) reliance and (2) damages. *In re Lumber Liquidators Litig.*, No. 1:16-md-2743, 2017 WL 29111681, at *12-13 (E.D. Va. July 7, 2017) (Trenga, J.). There is no requirement that the plaintiff establish the defendant's knowledge of the falsity or an intent to deceive, though the plaintiff may seek damages for willful violations. *See id.*

137. Here, Plaintiffs and the putative class members relied on the representation that they were required to pay the Disputed Fees when they signed their lease agreements and agreed

to pay and paid the fees in the amount provided under those agreements. Plaintiffs and the class members would not have paid the Disputed Fees unless substantially induced to do so by Defendants' representation that they were owed and that payment of the fees had certain uses and benefits. *See Elliott v. Shore Stop, Inc.*, 238 Va. 237, 245 (1989) (stating that misrepresentation of present fact that induces one to act to her detriment "is actionable as an actual fraud"); *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 532 (D. Md. 2011) (noting under analogous Maryland Consumer Protection Act that "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice" and rejecting but-for reliance theory). Commonsense dictates that consumers, like Plaintiffs and the class members, would not pay more than they are required to pay to obtain housing, as they do not have unlimited financial resources. Thus, Plaintiffs and the class members only paid the Disputed Fees based on Defendants' representation that they were lawfully owed and would have certain uses and benefits in return.

138. Moreover, Plaintiff Gerber and the subclass members reasonably relied on the advertising of the true rental cost of a unit at Defendants' properties when deciding to apply for housing at such property. Consumers, as rational actors in the marketplace, reasonably rely on advertising to decide between goods and services, particularly advertising of the costs of a good or service. This includes rental housing. Indeed, Defendants intended for their advertising of the price of a rental unit to induce Plaintiffs and the subclass members to act on the advertised price and thus apply, to their detriment, including the payment of application fees and the Disputed Fees.

139. Plaintiff and the putative class members have been damaged by Defendant Bozzuto's misrepresentations and material omissions, including through payment of the Disputed

Fees in reliance on Defendants' representation that they were owed and would have certain uses and benefits.

140. Defendant Bozzuto's violations were willful. Bozzuto knew at the time it imposed the Disputed Fees that such fees could not be charged under the clear language of Virginia law and the decision of the Virginia Court of Appeals that prohibited it from charging and collecting the fee in return for providing safe and habitable dwelling units and maintaining common spaces in good condition. Bozzuto also wanted to deliberately conceal the scheme, as it knew the fees violated the warranty of habitability imposed on landlords and that if tenants knew the fees could not be assessed or were in fact for a profit-generating purpose, the tenants would refuse to pay the fees or otherwise organize against their imposition. Bozzuto concealed and willfully misrepresented the true purpose of the Fees for its pecuniary gain, as the fees would help its bottom line and the bottom line of its clients (i.e., the landlords).

141. Plaintiff and the putative class members are thus entitled to damages for each month in which Bozzuto collected, or will collect, the Disputed Fees, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if Bozzuto's conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if Bozzuto's conduct was willful. Va. Code § 59.1-204.

142. Plaintiff and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

143. And Plaintiff and the putative class are entitled to injunctive relief enjoining the ongoing collection of the Disputed Fees under Va. Code §§ 59.1-203(C) and 59.1-205.

**COUNT TWO**
**VIOLATION OF VRTLA, Va. Code § 55.1-1220**
**(Class and Individual Claim by Plaintiffs against the Landlord Defendants)**

144. Plaintiffs incorporate each of the preceding allegations.

145. Under Federal Rule of Civil Procedure 23, Plaintiffs bring this claim on behalf of the following class of which they are each a putative class member:

> All persons who: (1) executed a lease with any of the Landlord Defendants under which they (2) paid or were obligated to pay any of the Disputed Fees within the past two years.

146. **Numerosity. Fed R. Civ. P. 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. There are at least 1,239 class members based on the number of units at Plaintiffs' apartment complexes. The class members' names and addresses can be identified through Defendants' and third parties' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice.

147. **Predominance of Common Questions of Law and Fact. Fed R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether the Landlord Defendants are subject to the VRLTA; (2) whether the Landlord Defendants violated Va. Code § 55.1-1220 by evading their obligations under the warranty of habitability and forcing tenants to waive the warrant of habitability through the lease agreement; and (3) the appropriate amount of damages for the Landlord Defendants' conduct.

148. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of

action as the other putative class members. All claims are based on the same facts and legal theories.

149. **<u>Adequacy of Representation.</u> Fed R. Civ. P. 23(a)(4).** Plaintiffs are adequate class representatives because their interests coincide with, and are not antagonistic to, the putative class members' interests. They have retained experienced and competent counsel; they intend to continue to prosecute this action vigorously; they and their counsel will fairly and adequately protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

150. **<u>Superiority.</u> Fed R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

151. The Landlord Defendants violated Va. Code § 55.1-1220 by forcing tenants to waive the warranty of habitability through the HVAC Fee, Trash Free, and/or Amenity Fee included in the lease agreement.

152. The Landlord Defendants' demand that their tenants pay a HVAC Fee, Amenity Fee, and/or Trash Fee is therefore a violation of the VRLTA.

153. Due to the Landlord Defendants' violations of the VRLTA, Plaintiffs are entitled, individually and on behalf of the class, to their damages under Va. Code. § 55.1-1259, including, at minimum, the Disputed Fee payments they and the putative class members have made thus far and will make during the pendency of the lawsuit. Plaintiffs and the putative class are also entitled to an injunction enjoining collection of the Disputed Fees into the future.

**COUNT THREE**
**VIOLATION OF VCPA, Va. Code § 59.1-200**
**(Class and Individual Claim by Plaintiffs against the Landlord Defendants)**

154. Plaintiffs incorporate the preceding allegations.

155. Under Federal Rule of Civil Procedure 23, Plaintiffs bring this claim on behalf of the same putative class as Count Two, of which they are each a member.

156. Under Federal Rule of Civil Procedure 23, Plaintiff Gerber brings this claim against Defendant Skymark on behalf of the following subclass of which he is a putative class member:

> All persons who: (1) executed a lease with Defendant Skymark under which they (2) paid or were obligated to pay any of the Disputed Fees within the past two years; and (3) who submitted a rental application through Skymark's website within the two years predating the Complaint.

157. **Numerosity. Fed R. Civ. P. 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. There are at least 1,239 class members based on the number of units at Plaintiffs' apartment complexes. The class members' names and addresses can be identified through Defendants' and third parties' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice.

158. **<u>Predominance of Common Questions of Law and Fact</u>. Fed R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether the Landlord Defendants misrepresented to Plaintiffs and the putative class members in their lease agreements that it could lawfully assess and collect Disputed Fees for obligations imposed on landlords under the statutory warranty of habitability; (2) whether Landlord Defendants misrepresented to Plaintiffs and the putative class members that the Disputed Fees would have certain uses and benefits when in fact the fees each generated profits for the Landlord Defendants and/or did not cover the described uses or benefits; (3) whether Defendant Skymark advertised to the subclass a price for renting a unit that it did not intend to honor, including because it did not disclose mandatory fees to the subclass members prior to their application; (4) whether the Landlord Defendants' violations were willful; and (5) the appropriate amount of damages for the Landlord Defendants' violations.

159. **<u>Typicality.</u> Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

160. **<u>Adequacy of Representation.</u> Fed R. Civ. P. 23(a)(4).** Plaintiffs are adequate class representatives because their interests coincide with, and are not antagonistic to, the putative class members' interests. They have retained experienced and competent counsel; they intend to continue to prosecute this action vigorously; they and their counsel will fairly and adequately

protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

161. **Superiority. Fed R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

162. As to Plaintiffs and the class members, the Landlord Defendants violated the VCPA, Va. Code § 59.1-200, by, at a minimum:

a. Representing to Plaintiffs and the putative class members that they owe a HVAC Fee, Trash Fee, and/or Amenity Fee, when in fact such services are guaranteed and unwaivable under the Virginia warranty of habitability as part of their right to a safe and habitable premises and clean and orderly common spaces to which their base rent entitles them;

b. Representing to Plaintiffs and the class members that the HVAC Fee and/or Trash Free were merely for the cost of "service to [their] dwelling" units, when

in fact the Landlord Defendants knew at the time it made such representation that each Fee did not cover services to the dwelling but in fact covered services outside of their dwelling unit and/or none of the services at all;

c. Representing to Plaintiffs and the putative class members that the HVAC Fee and/or Trash Fee was merely a flat rate "allocat[ion]" of the "bills . . . billed by the service provider to us" for each service, when in fact the Landlord Defendants knew at the time they made this representation that it each Fee was set not based on the actual costs of the services but based on the maximum possible profit they could generate from each Fee based on surveys of market competitors;

d. Representing to Plaintiffs and the putative class members that the HVAC Fee and/or Trash Fee were a "fair and reasonable" estimation of the costs of each service, when in fact the Landlord Defendants knew at the time they made this representation that it each Fee was set not based on the actual costs of the services but based on the maximum possible profit they could generate from each Fee based on surveys of market competitors;

e. Representing and deceptively implying that the HVAC Fee, Trash Free, and/or Amenity Fee merely cover certain services—i.e., have certain uses and benefits—when in fact they are specifically set by the Landlord Defendants at prices far higher than the actual costs of those services and/or are designed to benefit only Bozzuto and the Landlord Defendants while covering few if any of the services described or implied by the name of the Fee;

f. Representing that the HVAC Fee and/or Trash Fee are merely "utilities" that may be passed on to the tenants under Virginia law, when in fact that is not the case.

163. The above affirmative misrepresentations constitute, at a minimum, violations of Va. Code 59.1-200(5) and (6), insofar as they misrepresent that the goods and services provided by the fees have certain qualities, characteristics, uses or benefits, or are of a particular standard, quality, grade, style, or model. They also constitute a "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction," in violation of Va. Code § 59.1-200(14).

164. With respect to Plaintiff Gerber and the subclass members, Defendant Skymark also violated Va. Code § 59.1-200(A)(8) and (14) by deceptively advertising goods or services with intent not to sell them at the price or upon the terms advertised, including because Skymark's website failed at all times within at least the past two years to disclose all mandatory fees and surcharges in its advertising of the costs of renting a unit.

165. "The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud." *Ballagh v. Fauber Enters.*, 290 Va. 120, 124 (2015) (citing *Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014) ("[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law.... Therefore, [it] extends considerably beyond fraud.")). The elements "of the two claims are [therefore] different." *Id.* The VCPA applies to *both* misrepresentations and fraudulent acts by landlords in relation to a lease agreement, as outlined in § 59.1-200. Va. Code § 59.1-199(5). With respect to misrepresentations under the VCPA, a plaintiff need only show (1) reliance and (2) damages. *In re Lumber*

*Liquidators Litig.*, No. 1:16-md-2743, 2017 WL 29111681, at *12-13 (E.D. Va. July 7, 2017) (Trenga, J.). There is no requirement that the plaintiff establish the defendant's knowledge of the falsity or an intent to deceive, though the plaintiff may seek damages for willful violations. *See id.*

166. Here, Plaintiffs and the putative class members relied on the representation that they were required to pay the Disputed Fees when they signed their lease agreements and agreed to pay and paid the fees in the amount provided under those agreements. Plaintiffs and the class members would not have paid the Disputed Fees unless substantially induced to do so by Defendants' representation that they were owed and that payment of the fees had certain uses and benefits. *See Elliott v. Shore Stop, Inc.*, 238 Va. 237, 245 (1989) (stating that misrepresentation of present fact that induces one to act to her detriment "is actionable as an actual fraud"); *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 532 (D. Md. 2011) (noting under analogous Maryland Consumer Protection Act that "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice" and rejecting but-for reliance theory). Commonsense dictates that consumers, like Plaintiffs and the class members, would not pay more than they are required to pay to obtain housing, as they do not have unlimited financial resources. Thus, Plaintiffs and the class members only paid the Disputed Fees based on Defendants' representation that they were lawfully owed and would have certain uses and benefits in return.

167. Moreover, Plaintiff Gerber and the subclass members reasonably relied on the advertising of the true rental cost of a unit at Defendants' properties when deciding to apply for housing at such property. Consumers, as rational actors in the marketplace, reasonably rely on advertising to decide between goods and services, particularly advertising of the costs of a good

or service. This includes rental housing. Indeed, Defendants intended for their advertising of the price of a rental unit to induce Plaintiffs and the subclass members to act on the advertised price and thus apply, to their detriment, including the payment of application fees and the Disputed Fees.

168. Plaintiffs and the putative class members have been damaged by the Landlord Defendants' misrepresentations, including through payment of the Disputed Fees in reliance on Defendants' representation that they were owed and would have certain uses and benefits.

169. The Landlord Defendants' violations were willful. The Landlord Defendants knew at the time they imposed the Disputed Fees that such fees could not be charged under the clear language of Virginia law and the decision of the Virginia Court of Appeals that prohibited it from charging and collecting the fee in return for providing HVAC and trash control services and maintaining common spaces in a safe condition. The Landlord Defendants also wanted to deliberately conceal the scheme, as they knew the fees violated the warranty of habitability imposed on landlords and that if tenants knew the fees could not be assessed or were in fact for a profit-generating purpose, the tenants would refuse to pay the fees or otherwise organize against their imposition. The Landlord Defendants concealed and willfully misrepresented the true purpose of the Fees for their pecuniary gain, as the fees would help their bottom line.

170. Plaintiffs and the putative class members are thus entitled to damages for each month in which the Landlord Defendants collected, or will collect, the Disputed Fees, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if the Landlord Defendants' conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if the Landlord Defendants' conduct was willful. Va. Code § 59.1-204.

171. Plaintiffs and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

172. And Plaintiffs and the putative class are entitled to injunctive relief enjoining the ongoing collection of the Disputed Fees under Va. Code §§ 59.1-203(C) and 59.1-205.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants; injunctive relief; their attorneys' fees and costs; pre- and post-judgment interest at the legal rate; and such other relief the Court considers proper.

**TRIAL BY JURY IS DEMANDED AS TO ALL ISSUES SO TRIABLE, INCLUDING AT LEAST THE CLAIM AGAINST BOZZUTO.**

Respectfully submitted,
**PLAINTIFFS**

By:____*/s/ Kristi C. Kelly*______________
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiffs*